**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Bradley Mrkvicka, individually and on behalf of all other similarly situated employees** | No.  1:23-cv-00047-DII |
| *Plaintiffs,* | **PLAINTIFFS' UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT** |
| **v.** | |
| **Certified Tree Care LLC; Certified Tree Care Group LLC; Certified Tree Care Fort Worth LLC; and Brian Hisey** | |
| *Defendants.* | |

<u>**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT**</u>

**Drew N. Herrmann**
Texas Bar No. 24086523
drew@herrmannlaw.com
**Pamela G. Herrmann**
Texas Bar No. 24104030
pamela@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102

*ATTORNEYS FOR PLAINTIFFS AND COLLECTIVE MEMBERS*

## I.    INTRODUCTION

Plaintiff Bradley Mrkvicka, individually and on behalf of all other similarly situated employees (collectively, "Plaintiffs"), files this unopposed motion to approve the settlement reached in this Fair Labor Standards Act ("FLSA") case. The settlement is a reasonable compromise that will adequately compensate the participants for the unpaid overtime hours alleged and eliminate the need for the Parties to continue to engage in protracted and expensive litigation.

Mrkvicka filed this collective action on January 13, 2023. Compl., [Doc. 1]. Mrkvicka alleged that Defendants Certified Tree Care LLC, Certified Tree Care Fort Worth LLC, and Brian Hisey (collectively, "Defendants" or "Certified Tree") paid him and other similarly situated workers a day rate with no overtime pay for hours worked in excess of 40 in a workweek. *Id.* Mrkvicka, therefore, claimed that he and other similarly situated employees who worked for Certified Tree were entitled to unpaid back wages, as well as liquidated damages, attorney fees, interest, and costs pursuant to the FLSA. *Id.*; *see also* 29 U.S.C. § 216. Defendants continue to deny all allegations and dispute any liability with respect to the claims asserted.

Over the course of almost a year of litigation, the Parties obtained significant compensation data for the proposed class to evaluate the scope of Certified Tree's alleged FLSA violations. The Parties contested Certified Tree's actions, good faith, pay practices, the number of overtime hours worked, the regular rate, and other issues. The Parties participated in a full day mediation with Eric Galton, which was initially unsuccessful. However, the Parties continued engaging in settlement discussions post-mediation. Ultimately, the Parties finally reached an agreement to settle the wage and overtime claims of 13 individuals who worked for Certified Tree out of the Fort Worth branch—the same branch Plaintiff and the current opt-in Plaintiffs[1] worked. *See*

---

[1]    In addition to Named Plaintiff Mrkvicka, two others have filed consents to join this action as opt-in plaintiffs. *See* [Doc. 5]; [Doc. 18]

Settlement Agreement, Exhibit A at p. 5 ¶ 16; cf. *Id.* at p. 9 (Exhibit 1 to Settlement Agreement).

The Settlement provides the following relief for the settlement class members:

| | |
|---|---|
| Gross Settlement Fund: | $230,000.00 |
| Attorney Fees: | $77,000.00 (33.48%) |
| Costs and Expenses: | $9,000.00 |
| Third-Party Settlement Administrator | $3,000.00 |
| Service Award to Mrkvicka: | $5,000.00 |
| Net Settlement Fund: | $141,000.00 |

The settlement class members[2] who elect to participate in the Settlement will receive significant and meaningful relief for their alleged unpaid overtime wages. Mrkvicka submits this is a fair and reasonable result of a *bona fide* dispute concerning the payment of overtime wages owed to the settlement class members employed by Certified Tree at their Fort Worth branch. Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the Agreement as a fair and reasonable compromise of a *bona fide* dispute, and (2) dismissing this action is in its entirety, with prejudice, subject to the terms of the Agreement.

## II.    PROCEDURAL HISTORY

Shortly after Defendants filed their answer, the Parties held a Rule 26(f) conference pursuant to this Court's Order. *See* Answer, [Doc. 7]; Joint 26(f) Report and Req Phases, [Doc. 10]. During the Parties' initial conference, they discussed the possibility of attempting settlement and attending an early mediation. *See* [Doc. 10]. Thereafter, the Parties filed their Joint Report and

---

[2]    "Settlement class members" means Plaintiff and the twelve other employees who worked for Certified Tree out of their Fort Worth branch and were paid a day rate at any time between January 13, 2020 through December 1, 2023. *See* Settlement Agreement, Exhibit A at p. 5 ¶ 16; *See also Id.* at p. 9 (Exhibit 1 to Settlement Agreement).

requested this case proceed in Phases, with the first phase consisting of discovery related to whether Plaintiff and any other employees were similarly situated and the scope of the putative collective, if any, that were similarly situated and entitled to notice of their right to join this action pursuant to *Swales*. *Id.* The Parties subsequently agreed to toll the statute of limitations for any putative collective members and sought to stay all proceedings to allow the Parties an opportunity to explore settlement discussions. *See* Mot. to Stay, [Doc. 11]; Second Mot. to Stay, [Doc. 14].

Thereafter, the Parties engaged in an extensive alternative dispute resolution ("ADR") process in connection with these claims, which continued for several months. This process consisted of extensive ADR-related exchange of information and a full-day mediation session overseen by an experienced wage and hour mediator, Eric Galton, Esq. *See* Herrmann Decl., Exhibit B at ¶¶ 14-15, 16-20. In order to appropriately inform the ADR process, the Parties exchanged data and information to assess the value of the claims, which Plaintiffs' Counsel reviewed and analyzed extensively. This process allowed the Parties to assess the potential liability and possible damages for the asserted claims and engage in informed, good faith, arms-length settlement negotiations. *Id.* at ¶¶ 16-20. Despite extensive efforts and negotiation, the Parties were unable to reach a settlement during mediation. The Parties thus informed the Court of their failed mediation efforts and requested the Court reinstate deadlines for Phase One. *See* [Doc. 16 at p. 1].

Subsequently, the Parties engaged in formal discovery and exchanged additional information through formal discovery. After conducting additional discovery, the Parties continued to engage in settlement discussions. Finally, the Parties reached an agreement to settle for the Plaintiff and 12 other employees who worked in Fort Worth—the same branch that Plaintiff worked. Throughout this ADR process, the Parties, by and through their counsel, engaged in numerous discussions, as well as written correspondence and negotiations. *Id.*

As a result of the ADR process (including exchange of information), mediation, and settlement negotiations, the Parties agreed fully and finally to resolve this matter on the terms and conditions Class Counsel believes are fair and reasonable under the circumstances. *Id.* ¶¶ 21-29.

Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiffs have considered: (a) the facts developed during discovery and the mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs and the Settlement Collective Members to settle their claims against Defendants and the Released Parties (as defined in the Settlement Agreement). *Id.* ¶¶ 21-29.

Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. *Id.* The settlement is also significant given other significant litigation pending against Certified Tree. Shortly after this lawsuit was filed, a wrongful death lawsuit was filed by the estate of a former employee against the entity-Defendants named in lawsuit. *See Fuentes, et al. v. Certified Tree Care LLC, et al.*, Case No. 096-339599-23 (96th Dist. Ct., Tarrant County, Tex. filed Jan. 17, 2023). The wrongful death lawsuit against the entity-Defendants calls into question Defendants' continued wherewithal and ability to sustain a large judgment in this action, including a judgment with a broader collective with additional claimants. The potential liability that Defendants are facing further bolsters the settlement that was achieved and the significant value it provides for the 13 settlement class members. Indeed, despite these concerns, a settlement was achieved that provides the 13 settlement class members with nearly full value (including liquidated damages) for their claims.

For these reasons, and as set forth herein, Plaintiffs ask the Court to approve the Settlement and approve Counsel's attorneys' fees and costs.

### III.    SETTLEMENT TERMS

The Settlement is being offered on an "opt-in" basis pursuant to Section 16(b) of the FLSA. 29 U.S.C. 216 (b). Only those workers who elect to participate will be bound. Those settlement class members who elect to participate in the Settlement will receive their pro rata allocation of the Settlement funds based on their gross pay and the time period they worked for Certified Tree. Therefore, each settlement class member's settlement amount is, of course, different. However, because the alleged violations resulted from uniform practices, a single formula will be applied to the entire FLSA class to determine each settlement class member's pro rata allocation.

The settlement class members will have 90 days to review and decide whether to accept the Settlement. In exchange for accepting the Settlement, each participating class member will release Defendants and related persons and entities from any and all FLSA and state law wage and hour claims. The settlement class members who timely elect to participate will receive a settlement award at the close of the 90-day notice period. The awards shall be split in half and paid one-half through a W2 form ("W2 payment") and one-half through an IRS Form 1099 ("1099 Payment"). *See* Settlement Agreement, Exhibit A at pp. 4-5 ¶ 13; *See also Id.* at p. 9 (Exhibit 1 to Settlement Agreement). The 1099 payment will not be subject to withholdings but the W2 payment will have standard withholdings. Exhibit A at pp. 4-5 ¶ 13.

Mrkvicka will receive an additional payment of $5,000.00 as a Service Award for his service as the class representative in this litigation. *See* Settlement Agreement, Exhibit A at pp. 5 ¶ 14; *Cf. Izzio v. Century Golf Partners Mgmt., L.P.,* No. 3:14-cv-03194-M, 2019 U.S. Dist. LEXIS 226946, 2019 WL 10589568, at *11-12 (N.D. Tex. Feb. 13, 2019) (Lynn, C.J.) (approving incentive awards ranging from $10,000 to $3,000), *aff'd*, 787 Fed. Appx. 242 (5th Cir. 2019). The

service award will be paid as IRS Form 1099 income not subject to withholdings. The service award is intended to recognize Mrkvicka's initiative and efforts on behalf of the class members, and his execution of a general release (as opposed to the limited releases executed by the remainder of the class members). Mrkvicka provided information helpful to the case, initiated the lawsuit, and otherwise contributed to the overall litigation. *See, e.g., Purdie v. Ace Cash Express, Inc.*, Civil Action No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *25 (N.D. Tex. Dec. 11, 2003) (approving incentive award to named plaintiffs because "[p]laintiffs' commitment undoubtedly led to the proposed settlement fund"). The service award is reasonable considering the time, effort, and risks that Mrkvicka undertook in connection with filing this litigation, which resulted in a prompt resolution for the settlement class members. The modest amount of the requested payment is eminently reasonable especially considering each settlement class member's share of the net settlement value provides them with almost full value for their alleged overtime and a substantial portion of any liquidated damages that may have potentially been recovered. Exhibit B ¶ 28

## IV.    ARGUMENTS & AUTHORITY

### A.    Applicable Legal Standard

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Trevino v. Colt Oilfield Servs., LLC*, No. 5-18-CV-01304-FB-RBF, 2019 U.S. Dist. LEXIS 143315, at *3 (W.D. Tex. May 6, 2019) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "A reviewing court must determine that a settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (citing *Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 U.S. Dist. LEXIS 150658, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016)).

To approve an FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; and (2) the proposed settlement fairly and reasonably resolves the dispute. *See Stanley v. Patriot Inspection Servs.*, No. 6-20-CV-00283-ADA, 2021 U.S. Dist. LEXIS 14028, at *1-2 (W.D. Tex. Jan. 26, 2021) (approving FLSA settlement agreement and finding it "constitute[s] a fair and reasonable compromise on a *bona fide* dispute").

As set forth below, the proposed Settlement Agreement in this case falls well within the range of possible approval, because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement Agreement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement Agreement.

**B.    The Terms of the Proposed Settlement Agreement are Fair and Reasonable and Resolve a *Bona Fide* Dispute**

*1.    A bona fide dispute existed between the Parties*

Courts look to "whether there exists a bona fide dispute" under the FLSA regarding the hours worked or compensation due. *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d. 608, 631 (5th Cir. 2005). Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945).[1] This inherent inequality, of course, is diminished when workers are represented by experienced counsel. Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co.*, 2011 U.S. Dist. LEXIS 112187, at *6 (S.D.N.Y. July 11, 2011). "Typically,

courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id*. Absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotes omitted). "'If the proposed FLSA settlement reflects a reasonable compromise over contested issues,' it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *16 (S.D.N.Y. Mar. 2, 2010) (quoting Lynn's Food Stores, 679 F.2d at 1353-54).

Here, with regard to the wage claims at issue, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

1) the extent to which Plaintiff and the settlement class members were compensated for overtime hours worked;

2) the appropriate rate at which overtime should be paid when Plaintiff and the settlement class members did work more than forty (40) hours per week (i.e., half-time or time-and-one-half the regular rate);

3) whether Defendant Brian Hisey was individually liable under the FLSA;

4) whether Defendants would be able to meet their burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages;

5) whether Plaintiffs could obtain and maintain a collective action status of the action; and

6) whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

As a result of these arguments, and as reflected in the supporting documentation and discovery in the instant suit, the current settlement before the Court is the result of a bona fide dispute. Exhibit B pp. 6-7 ¶¶ 21-29. Ultimately, the Gross Settlement Amount that was agreed

upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the 13 Settlement Class Members. *Id.*; Exhibit A at p. 9 (Exhibit 1 to Settlement Agreement).

### 2. *The proposed settlement is fair and reasonable*

While the Fifth Circuit has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representative, and absent class members. *See Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109-PRM, 2012 U.S. Dist. LEXIS 190164, at *9 (W.D. Tex. Feb. 29, 2012); *Stepp v. Seton Family of Hosps.*, No. 1:16-CV-1251-RP, 2019 U.S. Dist. LEXIS 48962, at *5-6 (W.D. Tex. Mar. 25, 2019) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).

The Gross Settlement Amount provides Plaintiffs and the Settlement Collective Members with the recovery of unpaid overtime hours worked, and the settlement was carefully negotiated based on the exchange of information, a substantial investigation by the Parties, and the review and analysis of data and information produced to Plaintiffs. Exhibit B pp. 6-7 ¶¶ 21-29. There is no foundation to dispute the fairness of this proposed Settlement which resulted from arm's length negotiations. The Settlement was negotiated by attorneys who have been vigorously prosecuting these and similar claims for several years. *Id.* at ¶¶ 2-6. Plaintiffs' counsel have had considerable experience in wage and hour claims, both federal and state claims, and in this case both Parties were aware of and negotiated based upon the inherent risks with pursuing the case to trial. *Id.* Plaintiffs' counsel submits that the Settlement Fund of $230,000.00 for a class of 13 individuals is

reasonable in light of the attendant risks and considering the range of possible damages recoverable by the class. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 787-88 (3d Cir. 1995); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."). The Settlement is not a product of fraud or collusion. *Id.* ¶¶ 21-29.

The Gross Settlement Amount is based on an analysis of the payroll records for the Settlement Collective Members during the Relevant Time Period. *Id.* ¶¶ 14-20; 28-29. If the Settlement Agreement is approved, all Settlement Collective Members will receive a settlement award check, but only those Settlement Collective Members who sign, deposit and/or cash their Settlement Award will release claims against the Released Parties. Settlement Collective Members will receive a pro rata portion of the Net Settlement Amount calculated set forth in the Agreement. *See* Exhibit A at p. 5 ¶ 18; *see also Id.* at p. 10-13 (Exhibit 2 to Settlement Agreement).

In addition, the settlement provides significant, meaningful, and certain relief rather than speculative relief over a course of an additional number of years of litigation, including any potential appeals. Exhibit B at ¶¶ 21-26. The proposed settlement is fair, reasonable, and adequate when comparing it to proceeding with litigation, which would require a substantial amount of time to yield a benefit to the Settlement Collective Members. *See, e.g., Tharp v. Energes LLC*, No. 5:15-CV-983-DAE, 2018 U.S. Dist. LEXIS 237660, at *6 (W.D. Tex. July 16, 2018) (finding FLSA settlement fair and reasonable where "[i]n arriving at the proposed settlement, the [p]arties considered the expense and length of continued proceedings necessary to prosecute and defend this case"). In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

Further, the Settlement Agreement was the result of significant investigation, exchange of discovery and informal exchange of information, legal and factual disputes, and substantial arm's-length negotiations, which included engaging in ADR with Eric Galton, a highly-experienced wage and hour mediator. *See* Exhibit B at ¶¶ 14-20.  As described above, Plaintiffs' Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The Gross Settlement Amount is based on an intensive review of the facts and law. *Id.* at ¶¶ 16-29. The proposed Settlement Agreement is the product of careful factual and legal research and significant arm-length negotiations between the Parties, which warrants approval. *See Trevino v. Colt Oilfield Servs., LLC*, No. 5-18-CV-01304-FB, 2019 U.S. Dist. LEXIS 143315, at *3 (W.D. Tex. May 6, 2019) (approving FLSA settlement where "[t]he settlement agreement was negotiated by experienced attorneys and reflects an arms' length compromise of the disputed claims.").

Finally, the settlement is also significant given other significant litigation pending against Certified Tree. Shortly after this lawsuit was filed, a wrongful death lawsuit was filed by the estate of a former employee against the entity-Defendants named in lawsuit. *See Fuentes, et al. v. Certified Tree Care LLC, et al*., Case No. 096-339599-23 (96th Dist. Ct., Tarrant County, Tex. filed Jan. 17, 2023). The wrongful death lawsuit pending against the entity-Defendants has called into question Defendants' continued wherewithal and ability to sustain a large judgment in this action, including a judgment with a broader collective with additional claimants. Exhibit B at ¶ 26. The potential liability that Defendants are facing only bolsters the settlement value that was achieved in this matter on behalf of a narrowed collective of 13 employees. Notwithstanding the potential liability that the entity-Defendants are facing and the questions regarding their continued financial wherewithal, Plaintiffs achieved a settlement that provides significant value to the

settlement class members. Indeed, the settlement provides the 13 settlement class members with nearly full value (including liquidated damages) of their claims. *Id.* at ¶¶ 28-29. Accordingly, the standards for approval are met in this case.

**C.    The Proposed Settlement Agreement Furthers the Purpose of the FLSA**

The settlement achieved here furthers the purposes of the FLSA by providing the Settlement Collective with reasonable recovery for their alleged unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all settlement class members will receive a Settlement Award. *See Hiser*, 2021 U.S. Dist. LEXIS 131524, at *7 (quoting O'Neil and holding "settlement agreement is consistent with the FLSA's purposes of protecting workers 'from substandard wages and excessive hours' and safeguarding their ability to obtain relief to which they may be entitled).

**D.    Final certification of the settlement collective pursuant to 29 U.S.C. § 216(b) is appropriate**

Courts in this Circuit do not always require final certification of FLSA collectives pursuant to 29 U.S.C. § 216(b) for purposes of settlement. *See In re Wells Fargo Wage & Hour Emp. Pracs*. Litig. (No. III), 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014) ("[C]ourts in the Fifth Circuit have never imposed such a [final certification] requirement and the court is not persuaded that it is necessary or appropriate."). The Parties here have agreed, however, that for settlement purposes only, certification of the settlement class members as a collective action under the FLSA pursuant to 29

U.S.C. § 216(b) is appropriate. Plaintiffs assert, and Defendants do not challenge for settlement purposes only, the Settlement Collective Members are "similarly situated" for settlement purposes because (1) the settlement class members worked under the same conditions and compensation policies; (2) were subject to the same alleged unlawful practices in that they worked more than 40 hours per week but, Plaintiffs allege, did not receive payment for all overtime hours worked or at the proper overtime rate; and (3) the same defenses apply to all settlement class members since Defendants deny the allegations in this matter. Further, fairness and procedural concerns counsel in favor of final certification, which will enable the settlement class members the option to receive compensation for their unpaid wage and hour overtime without the need to file individual actions. Plaintiffs' Counsel has settled similar cases involving claims of unpaid overtime violations under the FLSA. Accordingly, collective action treatment pursuant to 29 U.S.C. § 216(b) is appropriate for purposes of settlement.[3]

**E.    The Request for Attorneys' Fees and Costs Should be Approved**

---

[3]    The Settlement also provides that Mrkvicka, as the Named Plaintiff, will receive an additional negotiated payment in exchange for a broader general release of claims, and in recognition of her respective services provided to all settlement class members. The proposed additional payment in exchange for a general release of claims to the Named Plaintiff does not otherwise impact the fair and reasonable resolution of a *bona fide* dispute. Further, "courts approve service awards for named plaintiffs and class representatives insofar as they are reasonable." *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 U.S. Dist. LEXIS 136394, at *12 (S.D. Tex. Jan. 31, 2018) (citing *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 U.S. Dist. LEXIS 186251, at *19 (W.D. Tex. Dec. 23, 2015) (approving service award of $7,500 to named plaintiff)). Here, Plaintiff took significant risks in coming forward to represent the interests of fellow workers, including risking their reputations in the community and in their field of employment, in order to participate in this case on behalf of the settlement class members. Plaintiff worked with Counsel, providing background information about their employment, providing information about Defendants' policies and practices, and providing information to support the allegations in this matter. The payment of the service award does not otherwise impact the fairness and reasonableness of the settlement and is consistent with incentive payments in similar cases. *See, e.g., Sizemore-Easter et al v. Amazon.com, Inc. et al*, No. 5:23-cv-00164, ECF No. 20 (W.D. Tex. April 24, 2023) (ECF No. 20); *Izzio v. Century Golf Partners Management*, 2019 U.S. Dist. LEXIS 226946, 2019 WL 10589568, at *11-12 (N.D. Tex. Feb. 13, 2019) (Lynn, C.J.) (approving incentive awards ranging from $10,000 to $3,000), *aff'd*, 787 Fed. Appx. 242 (5th Cir. 2019).

A plaintiff in an FLSA case may recover their attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Steele v. Leasing Enterprises, Ltd*., 826 F.3d 237, 249 (5th Cir. 2016) (award of attorney's fees under Section 216(b) of the FLSA is mandatory); *Riddle v. Tex-Fin, Inc.*, No. H-08-3121, 2011 U.S. Dist. LEXIS 29863, at *12 (S.D. Tex. Mar. 22, 2011).

The Court may begin its analysis of a contingent attorney fee award by looking at fees awarded in other courts, particularly in the Fifth Circuit. The Fifth Circuit recognizes that contingency fees are desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643–44 (5th Cir. 2012). While the Fifth Circuit has not expressly adopted the percentage method over the lodestar method for common fund lawsuits, "[n]umerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." *Schwartz v. TXU Corp*., Nos. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *83 (N.D. Tex. Nov. 8, 2005). The Fifth Circuit recognizes that trial courts have the discretion to award fees based solely on a percentage of the fund approach. *See*, e.g., *Hiser*, 2021 U.S. Dist. LEXIS 131524, at *7 (approving attorneys' fees as 40% of the common fund in an FLSA action based on the terms of the settlement agreement and holding the "[c]ourt finds that the attorney's fees provision in the settlement agreement is fair and reasonable").

In FLSA cases such as this,[4] courts in this Circuit regularly approve attorneys' fees

---

[4] Other types of actions may involve concerns not present in an FLSA matter such as this. For example, Rule 23 class actions have unique procedural rules not applicable to an FLSA case, and notably bind nonparticipating class members, while an FLSA action requires an affirmative decision by potential collective members to opt-in.

amounting to 40% or more of the settlement amount in FLSA cases. *See e.g., Id.* (approving attorneys' fees as 40% of the common fund in an FLSA action); *see also Comeaux v. Quality Energy Servs., Inc.* No. 6:15 CV 02510 RGJ PJH, [ECF No. 78] (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%). And here, as part of the negotiations that led to the Settlement Agreement, the Parties agreed to negotiated contingency award of approximately one-third (33.48%) of the Gross Settlement Amount for attorneys' fees – less than the 40% that is regularly approved, which Plaintiffs submit is reasonable and supports approval here.

In evaluating whether fee awards, the Court may look at the factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors include: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. Given that Plaintiffs Counsel's request of one-third is already significantly below the 40% award that is often granted, Plaintiffs respectfully submit that none of the *Johnson* factors warrant a further downward departure from Plaintiffs' Counsel's requested fees. Nonetheless, Plaintiffs discuss these factors, in turn, below.

First, "the most critical factor in determining a fee award is the degree of success obtained" (factor 8). *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). Here, and as described above, the Gross Settlement Amount represents a significant recovery on behalf the settlement class members in light of the known risks of the case. The settlement class members will

undeniably receive the benefits of the settlement here that they potentially may not have ultimately recovered through this litigation or through their own lawsuit. In sum, the Settlement represents a positive result given the circumstances of the lawsuit and, thus, the "amount involved and results obtained" factor supports the proposed fee award.

Second, there are numerous disputed issues of fact and law. For instance, Defendants denied all of the allegations and denied that they are liable or owe damages. Defendant Brian Hisey also denied that he was an employer and thus could not be held liable in his individual capacity. Moreover, Defendants argued that the settlement class members were lawfully paid and were not owed any additional compensation. Finally, Defendants argued to the extent they did violate the FLSA and were found liable, they acted in good faith and thus the settlement class members would not recover any amount for liquidated damages. Because Defendants had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to obtain and maintain certification in the action, an outcome of zero recovery for Plaintiffs and the settlement class members remained possible.

Third, the wage and hour issues in this matter are governed by the highly technical FLSA and federal regulations. Plaintiffs' Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. *See* Exhibit B ¶¶ 2-6. Plaintiffs' Counsel thus had the requisite skill to perform the legal services required in this complex litigation. And as is described in the declaration submitted herewith, Plaintiffs' Counsel have shown their ability by achieving the positive result obtained for Plaintiffs and the settlement class members. *Id.* Plaintiffs' Counsel undertook significant risk in agreeing to represent Plaintiffs (factor 10). The risk assumed by Counsel is similar to that recognized by district courts in the Fifth Circuit. *See Garza v. Sporting*

*Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *118 (W.D. Tex. Feb. 6, 1996) ("Factors [ ] such as the financial burden on counsel and the demands of handling a class action of the size and complexity as set forth, may cause a case to be considered 'undesirable.'") (internal citations omitted). And Plaintiffs' Counsel took on these matters at the exclusion of other matters (factor 4). A significant portion of Plaintiffs' Counsel's practice involves matters representing employees in wage and overtime cases under the FLSA, and this time could otherwise have been spent on other matters. *See* Exhibit B at ¶¶ 2-6.

The experience, reputation, and ability of Plaintiffs' Counsel therefore, supports the requested fee award (factors 3, 4, 9 and 10). *See Stepp*, 2019 U.S. Dist. LEXIS 48962, at *5-6 (approving FLSA settlement where "[t]he parties [we]re represented by counsel experienced in FLSA disputes and reached a settlement after months of arms-length negotiation"). Fourth, and as noted above, Plaintiffs' Counsel agreed to represent Plaintiffs on a contingency fee basis (factor 6). *See* Exhibit B at ¶ 32. The Fifth Circuit has recognized, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful from those who are assured of compensation, regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) (en banc.). Other courts have also recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245–46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." Id.

In this case, Plaintiffs' Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. Exhibit B at ¶ 32. This factor thus weighs in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent Plaintiffs on a contingency fee basis. By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. *See Fuchs v. B & B Star Air Duct & Hvac*, No. 1:20-CV-319-RP, 2021 U.S. Dist. LEXIS 125723, at *4 (W.D. Tex. Jan. 7, 2021) ("[T]he [contingent] attorney's fees and costs provisions of the settlement are appropriate and align with the remedial purposes of the FLSA"); *Diaz v. World Acceptance Corp.*, No. 1:19-CV-957-RP, 2021 U.S. Dist. LEXIS 124650, at *4-5 (W.D. Tex. Jan. 7, 2021) (holding same approving attorneys' fees as one-third of settlement).

The Fifth Circuit recognizes that a contingency fee is desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt*, 669 F.3d at 643–44; *Stanley*, 2021 U.S. Dist. LEXIS 14028, at *1-2 (approving FLSA settlement which included 35% contingency attorneys' fees); *Fuchs*, 2021 U.S. Dist. LEXIS 125723, at *4 ("The Court finds that the [40%] contingency fee provided is appropriate and declines to adjust it.").

As described above, the requested contingency award of one-third is less than what is regularly awarded, further supporting its reasonableness. (factors 5, 6, and 12). *See Fuchs* at *4 (approving 40% attorneys' fees award); *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 U.S. Dist. LEXIS 131524, at *7 (W.D. Tex. Jan. 25, 2021) (approving 40% fee award and holding "this percentage is in line with that courts have approved in reviewing other FLSA settlements"); *Singer v. Wells Fargo Bank, N.A.*, No. 5:19-00679, 2020 U.S. Dist. LEXIS 256111, at *31 (W.D. Tex. July 14, 2020) ("The Parties' agreement that Plaintiffs' counsel is entitled to a

total of forty percent of the gross settlement amount for fees and costs is also reasonable.") (citing *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (acknowledging that contingency fees for class funds have ranged from thirty-five percent to forty percent); *Matthews v. Priority Energy Servs., LLC*, No. 6:15-CV-448, 2018 U.S. Dist. LEXIS 82716, 2018 WL 1939327, at *2 (E.D. Tex. Apr. 20, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 82715 (E.D. Tex. May 11, 2018) (approving forty percent contingency fee in FLSA collective class action that required nearly three years of litigation)); *see also Ellis v. Baptist Mem'l Health Care Corp*., No. 3:18-CV-73, 2021 U.S. Dist. LEXIS 60875, at *9 (N.D. Miss. Mar. 30, 2021) (holding 35% fee "has been deemed a reasonable rate within the Fifth Circuit") (collecting cases).

Finally, Plaintiffs' Counsel collectively have spent hundreds of hours investigating and bringing this case to a successful settlement for the benefit of the settlement class members, as described above and as summarized in the Declaration of Drew N. Herrmann. Such efforts have included developing the legal theories of Defendants' wage and hour violations; conducting substantial legal and factual research on the alleged violations; engaging in both formal and informal discovery; performing an in-depth review of the data and information exchanged, including significant data analysis; attending mediation; engaging in written correspondence and negotiations; finalizing the Settlement Agreement; and preparing this motion. Moreover, Plaintiffs' Counsel will perform additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement. Id. Factors 1 and 7 support the requested fee. [5]  In sum, given that the requested fee is significantly less than the percentages

---

[5]    Factor 11 also supports the requested fee. Representing employees in wage and hour matters are different than defense firms which have a steady book of corporate clientele. Typically, defense firms' clients require continuous legal services from their counsel. Comparatively, it is unlikely that many plaintiffs will be seeking additional representation from a plaintiffs' counsel after the conclusion of a lawsuit. The wage claims asserted in this matter do not lend themselves to continuous, long-term attorney-client relationships. This factor thus weighs in favor of the requested fee award.

routinely approved by Courts in this Circuit for similar matters, and giving the efforts performed by Plaintiffs' Counsel to bring about a prompt settlement of this matter, the requested fee of 33.48% of the Gross Settlement should be approved.

**F.   Plaintiffs' counsel's expenses should be approved.**

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). "Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award." *Quintanilla v. A & R Demolition, Inc*., No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *25 (S.D. Tex. May 7, 2008)

Plaintiffs' Counsel's expenses incurred in this lawsuit include such costs as mediation fees, court costs, photocopying, postage, courier service, computer legal research, and the cost of a third-party administrator to administer payments to the class under the settlement agreement. Exhibit B at ¶ 31; *accord Lopez v. Eats*, No. 3:18-cv-1091-X-BN, 2023 U.S. Dist. LEXIS 111061, at *17 (N.D. Tex. June 28, 2023) ("Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award."). The costs and expenses are reasonable and necessary for the successful prosecution of this matter and to bring this matter to a close.

**PRAYER**

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the Settlement Agreement as a fair and reasonable compromise of a bona fide dispute; and (2) dismissing this action is in its entirety, subject to the terms of the Settlement Agreement. Plaintiffs further request all such other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,


By: */s/ Drew N. Herrmann*

Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102

ATTORNEYS FOR PLAINTIFFS
AND COLLECTIVE MEMBERS


CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendants regarding this motion and Defendants are not opposed.

*/s/ Drew N. Herrmann*

Drew N. Herrmann


CERTIFICATE OF SERVICE

I certify that on February 9, 2024 the above document will be filed via CM/ECF, which will cause a copy to be served on all counsel of record.

*/s/ Drew N. Herrmann*

Drew N. Herrmann